THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. CARMELO BERDECIA, Defendant and Appellant.

No. 8731. Argued July 9, 1941.—Decided July 26, 1941.

318

*Agustín E. Font* for appellant. *Emilio de Aldrey, Acting Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Attorney General,* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

Carmelo Berdecia and Juan Sarria Pacheco were insular policemen stationed at Ponce on and prior to January 1, 1936. In a joint information they were charged with murder in the second degree for the killing of Alessio Martinó. They asked to be tried separately, and the trial of Sarria Pacheco having been held first, the latter was convicted in accordance with the information and sentenced to twelve years' impris-

onment in the penitentiary, which sentence was affirmed by this court. *People* v. *Sarria,* 57 P.R.R. 865.

Subsequently, after a trial, Berdecia was also convicted of the same crime and sentenced to ten years' imprisonment in the penitentiary. From that judgment he has taken the present appeal.

The participation which, according to the evidence for the prosecution, Berdecia had in the commission of the crime, consisted in having counseled or instigated Sarria Pacheco to kill the victim. The evidence for the prosecution is substantially the same as that introduced in the case of *People* v. *Sarria, supra.* Therefore, it is unnecessary that we should make a new summary thereof. It will be sufficient for us to refer to what we then said.

The evidence for the defense tends to show that the defendant at no time counseled or instigated the commission of the crime; that, on the contrary, when the defendant went to the place of the occurrence, that is, the ward of the Tricoche Hospital where the victim lay on a bed, Sarria Pacheco standing in front of him, he did so in order to prevent Sarria from attacking Martinó, as he had noticed that the former was very nervous and the victim provoked him by uttering insulting words against the police force in general and against Sarria in particular.

The appellant has assigned nine errors as committed by the lower court.

The first assignment relates to the court's failure to sustain the motion for dismissal of the prosecution which the defendant presented, based on Section 448 of the Code of Criminal Procedure, and Section 2 of the Organic Act.

There is no doubt that from March 17, 1936, when the information was filed, to March 15, 1937, when the trial in this case was held, there had fully elapsed the period of 120 days fixed by Section 448 of the Code of Criminal Procedure. But was there or was there not a just cause for the delay?

Did the trial judge abuse his discretion in refusing to order the dismissal of the prosecution? That is precisely the question to be decided. As we have stated before, the defendants asked to be tried separately and their request was granted. The trial in the case of Sarria Pacheco took place during February 1, 2, and 3, 1937, legally within the 120 days, for although some continuances were ordered, this was done for good cause, and the same interrupted the limitation period. During all that time the District Court of Ponce was extremely busy, and as it had not been able to hold the trial in the *Sarria* case, it seemed reasonable to wait for the termination thereof before setting the Berdecia case for trial. As the trial in the *Sarria* case was concluded on February 4, 1937, and as the trial in the proceedings against Berdecia was held on the 15th of the following month, only a little over a month had elapsed between the termination of one trial and the beginning of the other. After considering all the circumstances of the case, we do not feel justified in disturbing the action of the trial court in exercising its discretion in the sense of refusing to dismiss this prosecution. See the case of *People* v. *Morán*, (Cal.) 77 P. 777.

In our judgment, the first of the errors assigned is nonexistent.

■■ The second assignment is based on the denial of the motion in which the defendant prayed that the district attorney furnish him with a bill of particulars specifying the participation of the appellant in the killing of Alessio Martinó.

Criminal jurisprudence acknowledges to every accused the right to demand that through a bill of particulars he be furnished with the details of his participation in the crime charged against him, provided such information is necessary in order to enable him to prepare his defense. In the present case, Carmelo Berdecia and Juan Sarria Pacheco were charged, as authors or principals (Section 36, Penal Code),

with the murder of Aléssio Martinó, and it was alleged that they perpetrated the crime by firing a revolver shot at him while the said Alessio Martinó lay wounded on a bed in the emergency ward of the Municipal Hospital of Ponce (Tricoche), by inflicting on him and causing him, then and there, such a severe wound that the same was the immediate cause of the unlawful death of Alessio Martinó, which occurred on January 1, 1936, at the Pila Clinic, in Ponce. The participation which each of the accused had in the commission of the crime was not specified and this information was necessary for the preparation of their defense. In such circumstances, we have no doubt that the defendant was entitled to demand the information referred to in his motion for a bill of particulars. However, the granting of a bill of particulars rests in the sound discretion of the court, and such discretion will not be reviewed or disturbed on appeal unless manifest abuse thereof and prejudice to substantial rights of the accused are shown. *Lanasa* v. *State,* (Md.) 71 A. 1058, 1082; *State* v. *Lassotovitch,* 81 A.L.R. 69; Abbott's Criminal Trial Brief, pp. 112 and 113, and cases cited therein.

Assuming that in the present case there was an abuse of discretion in refusing the bill of particulars sought, there is no showing in the record that the appellant suffered any prejudice by reason of the lack of said information. On the contrary, from the transcript of the evidence it clearly appears that the defendant set up his defense without any difficulty and that he was perfectly aware of the participation in the crime which was charged against him.

■■ The third assignment of error refers to the admission by the court of the testimony of the witness José Antonio Rivera, whose name had not been indorsed on the information.

In a long series of cases this court has held that there is no legal provision requiring the district attorney to indorse on the information the names of all the witnesses for the

prosecution known to him; and that the admission of the testimony of a witness whose name does not appear indorsed on the information is discretionary with the trial court, whose discretion cannot be reviewed unless prejudice to the accused is shown. See *People* v. *Román,* 18 P.R.R. 217, and the more recent case of *People* v. *Berenguer, ante,* p. 79. To the same effect see also Abbott's Criminal Trial Brief, pp. 400–402. Not only does it not appear from the record that the testimony of the witness prejudiced, or constituted a surprise for, the accused, but from the evidence it appears that counsel for the defendant had personal knowledge of said testimony.

■ The fourth assignment is based on the action of the court in striking out the testimony of the witness Pedro Serrano, to the effect that on the same night of the occurrence Sarria Pacheco had assaulted Gómez Mesorana, a newspaperman.

The matter on which this witness was examined was irrelevant, and if his testimony on this point had been admitted it might have deviated the attention of the jurors from the true question in controversy.

In the case of *People* v. *Sarria, supra,* the defense also attempted to introduce evidence as to a certain fight between the deceased and an individual named Américo Delgado, and this court, sustaining the refusal of the trial court to admit the same, held:

"The trial court may refuse to allow a witness to testify as to facts which do not affect the crime committed. . .. A fight which had occurred between the deceased and a third person, or even an attack made by the deceased upon said person, could not in any way affect the crime committed by the defendant."

The same thing could be said in the present case. The fact that Sarria Pacheco before killing Martinó should have assaulted Gómez Mesorana does not affect the evidence introduced by the district attorney tending to show that the appellant instigated or aided in the commission of this crime.

■ It is urged that the lower court erred in allowing the witness Arsenio Acosta to testify that when the defendant arrived at the Tricoche Hospital, shortly before the commission of the crime, the defendant was in an intoxicated condition. The defense maintains that that was a conclusion of fact on the part of the witness and that for that reason the same was inadmissible.

That evidence was perfectly admissible, since the witness stated the observations which he had made and which led him to the conclusion that the defendant when arriving at the hospital was in an intoxicated condition. The jurors who heard those observations could determine for themselves, by using their own judgment, whether the conclusion which the witness had reached was in fact justified or whether on the contrary it was groundless and hence should not be accepted. The fifth error assigned was not committed either.

■■ The sixth assignment of error is formulated thus:

"In having given instructions to the jury after the latter had retired to deliberate, without said instructions having been previously requested by the district attorney, by the defense, or by the jury, the said instructions being officious and constituting an implied order or commination to return a verdict when the jury, after a prolonged deliberation, had reported that it was absolutely impossible for them to reach an agreement."

What happened, as appears from the record, was that when only twenty-four hours had elapsed since they had begun to deliberate, the jury requested to be returned to the court, which request was granted. Once in open court, in the presence of the district attorney and of the defense counsel, the jury, speaking through their foreman, stated to the court that they thought that they would be unable to reach a verdict, as differences of opinion existed which they thought could not be harmonized. The judge asked the district attorney and the counsel for the defense whether they had anything to state with reference to the request made by the jury, and after they answered that they had nothing to say,

the judge, without using any expression which might be construed as a suggestion that the verdict should be one way or the other, addressing the jurors suggested to the latter the advisability of deliberating a little longer with a view to trying to reach a verdict either way. It is true that some time afterwards the jury brought in a verdict of guilty, but this does not mean that said verdict had been influenced by the court's remarks. In the presence of the defense counsel and of the district attorney and after the verdict had been read, the judge asked the jurors individually whether that was the verdict and whether they had voted on the same freely and of their own will, and each and all of them answered in the affirmative.

In our judgment, the court acted correctly in urging that the deliberations should be continued a little longer, in view of the importance of the case, the duration of the trial—three days—and the comparatively short time which such deliberations had lasted. It was reasonable that the judge should remind the jurors of their duty, imposed by law, to act in conformity with their own conscience and in accordance with the evidence in order to avoid that some of the jurors who wished to evade their responsibility might succeed in doing so by stating that they had formed an opinion which they really did not entertain. Twenty-four hours of deliberation in a case so important as the present one does not seem too long a period not to justify the judge in urging that the jury should not yet be dissolved.

It would not be proper to accept the theory of the defense that this was a compromise verdict, since under the instructions given by the court only one of two verdicts was possible: guilty or not guilty; and consequently after the jurors had reached an agreement, it could not be maintained that they had returned a third verdict different from that which embodied the true assent of all the members of the jury. The sixth error assigned is therefore nonexistent.

 The seventh assignment is that the court erred in giving its instructions to the jury and in refusing some instructions and modifying others requested by the defense.

We have carefully examined the instructions delivered by the court and, after considering them as a whole, we really fail to find that the lower court committed any error in giving them. A judge is not bound to give the whole of an instruction requested by the defense if he thinks that the same is erroneous in part. His duty is to amend it and then transmit it, if the subject-matter thereof has not been sufficiently covered by the general charge.

 The appellant complains of the action of the judge in refusing to instruct the jury on voluntary manslaughter in this case. There is no evidence in the record to justify an instruction on voluntary manslaughter. The court would have erred had he given such an instruction. *People* v. *Sarria, supra.*

The eighth and ninth errors lack importance. In the eighth the appellant complains of the denial of his motion for a new trial based on the above-stated errors. In the ninth he urges, on similar grounds, that the verdict is contrary to law. As both of these assignments of errors are predicated on the ones which we have previously discussed, and as we have reached the conclusion that the latter are nonexistent, we likewise must conclude that the former are also nonexistent.

For the reasons stated the judgment appealed from must be affirmed.

Mr. Justice Todd, Jr., took no part in the decision of this case.